## DAVID BOGORATT vs. PRATT & WHITNEY AIRCRAFT COMPANY ET ALS.

* MALTBIE, C. J., HINMAN, BANKS and AVERY, Js.

* By agreement of counsel this case was argued before four justices.

Argued October 21st, 1931—decided January 12th, 1932.

*Josiah H. Peck* and *Louis Y. Gaberman,* for the appellant (plaintiff).

*Roger W. Davis,* for the appellee (defendant Turner Construction Company).

*Joseph F. Berry,* with whom was *Julius G. Day, Jr.,* for the appellee (defendant Pratt & Whitney Aircraft Company).

*Warren Maxwell,* for the appellee (defendant Livingston & Company).

HINMAN, J.   During the years 1929 and 1930 there were in process of construction in East Hartford buildings comprising a manufacturing plant owned by the defendant Pratt & Whitney Aircraft Company, hereinafter referred to as the Aircraft Company.   The complaint alleged that the defendant Turner Construction Company, hereinafter referred to as the Turner Company, was the general contractor for the erection of the plant, and that the defendant J. Livingston and Company, which we shall refer to as the Livingston Company, was contractor for the electrical work and equipment; that on January 16th, 1930, the plaintiff was engaged in painting upon the exterior of the main building and while working on a scaffolding, came in contact with a wire, carrying electricity of high voltage, which was strung through a window the sash of which he was painting, at a point about sixteen feet from the ground, whereby he was thrown to the ground and injured.   The plaintiff alleged and claimed that the defendants and each of them were negligent in maintaining the wires in that they failed and neglected to post a sign on the north wall of the building giving notice of the high voltage which the wires carried and the danger therefrom, that the wires were not kept and maintained reasonably safely insulated and grounded, and in that they permitted the plaintiff to work around the building without warning him of the danger.

The Turner Company filed an answer admitting that it was general contractor but denied any connection with the contract of the Livingston Company, and as to the other material allegations interposed denial or plea of no knowledge.   It also pleaded, as a special defense, that it sublet the work of painting to a subcontractor,

Scully-McDonnell & Company, by whom the plaintiff was employed; that both it and the subcontractor were subject to the Compensation Act, and that the plaintiff made claim for and received compensation thereunder. The Aircraft Company filed a similar answer, and a special defense containing similar allegations, also that this defendant procured the work to be done by Scully-McDonnell & Company through the Turner Company, and the work so procured to be done was a part or process in the trade or business of this defendant. The allegations of these special defenses, except that the work was part or process in the trade or business of the Aircraft Company and the allegation in each that because of the situation alleged the defendant was not liable to the plaintiff in an action for damages, were admitted by the plaintiff either in his replies or in the course of the trial. The defendant Livingston Company filed a general denial.

Upon the trial, the essential facts alleged in the complaint pertaining to the physical situation and the manner in which the plaintiff sustained his injury were substantially undisputed upon the evidence.

At the conclusion of the evidence, the trial court· directed the jury to return verdicts for the Aircraft Company and the Turner Company on the ground that it appeared that each of them was protected by the Workmen's Compensation law from liability in this action for negligence, and in favor of the defendant Livingston Company on the ground that the failure on its part to put up warning signs under the circumstances did not constitute negligence, but if it did, the work having been turned over to the Aircraft Company and being at the time of the accident under its control, the Livingston Company as a matter of law would not be liable. The appeal questions the justification of the trial court in so directing the verdicts.

The first question, concisely put, is whether the Aircraft Company or the Turner Company or both, are answerable to an employee of a subcontractor of the latter in a common-law action for damages arising out of and in the course of his employment, and alleged to have been caused by negligence. Solution of this problem involves the construction and application of relevant provisions of our Compensation Act which are appended in a footnote.

The provisions of § 5226 make it entirely clear that as between all "persons in the mutual relation of employer and employee" the right to obtain and the lia-

"Sec. 5226. ACCEPTANCE OF PART B. When any person in the mutual relation of employer and employee shall have accepted part B of this chapter [280], the employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained; but the employer shall pay compensation on account of personal injury in accordance with the scale hereinafter provided. . . . The acceptance of part B of this chapter by employers and employees shall be understood to include the mutual renunciation and waiver of all rights and claims arising out of personal injury sustained in the course of employment as aforesaid, other than rights and claims given by part B of this chapter. . . ."

"Sec. 5230. PRINCIPAL EMPLOYER, CONTRACTOR AND SUBCONTRACTOR. When any principal employer shall procure any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done shall be a part or process in the trade or business of such principal employer, and shall be performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor."

"Sec. 5231. When any injury for which compensation is payable under the provisions of this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person. . . ."

bility to pay compensation under the Act is substituted for the common-law rights and liabilities otherwise existing between them, to the exclusion of the latter. *Wells* v. *Radville,* 112 Conn. 459, 463, 153 Atl. 154. Our decisions leave no doubt as to our conception of the meaning, scope, and effect of § 5230 as to liability to pay compensation. "This section, passed in 1913, is made a part of Part B of the Compensation Act to strengthen its remedial purpose. It in effect provides an addition to the definition of employer and employee found in the original Act. Under it a principal employer in an undertaking becomes, in reference to the Compensation Act, the employer of all employees on the work who come within the terms of the section. When a principal employer (contractor) undertakes a piece of work in this State and voluntarily accepts Part B of the Compensation Act, he makes the Act, including § 5345 [now § 5230], a part of his undertaking, and his employees, in relation to the Compensation Act, include those who come within the terms of this section. *Douthwright* v. *Champlin,* 91 Conn. 524, 100 Atl. 97. . . . The defendants claim that under § 5345 no liability can arise against either as a principal employer, unless the plaintiff has exhausted his remedy against his immediate employer and his insurer, if any. The terms of the section do not countenance such a limitation upon its use; whenever an injured employee of a subcontractor receives a compensable injury he may pursue his remedy against his immediate employer or any one or more principal employers as thus defined, or against all in one proceeding. Where there is an original contractor and a consecutive chain of subcontractors down to the workman receiving a compensable injury, each contractor in such chain and his immediate employer is a principal employer as to the injured workman under

§ 5345." *Palumbo* v. *Fuller Co.,* 99 Conn. 353, 358, 365, 122 Atl. 63. In *Pascoal* v. *Mortenson,* 109 Conn. 39, 44, 145 Atl. 149, after adverting to the *Palumbo* case, we held it "too clear for further discussion" that an award under this Act can make no distinction between principal employers, within the definition of § 5230, and subcontractors. *Johnson* v. *Mortenson,* 110 Conn. 221, 147 Atl. 705, did not concern rights and obligations obtaining between the employee on the one hand and the general contractor and the subcontractor on the other, which had been settled in *Pascoal* v. *Mortenson,* but the further question, which had been held not to be within the former appeal, as to the rights and liabilities of the contractor and the subcontractor as between themselves. It was again observed (p. 225) that the section (5345) which is now § 5230 recognizes no distinction between principal contractor and subcontractor as to liability to a claimant for compensation, but holds both primarily liable to him. It does appear from the opinion, however, that the addition to or expansion of the definition of employer and employee as found in the original Act, mentioned in the *Palumbo* case (p. 358) as having been worked by the adoption of this section, is confined to the subject-matter of the section and does not extend to all other provisions of the Act. See also *White* v. *Fuller Co.,* 226 Mass. 1, 4, 114 N. E. 829.

The further question is now presented whether, notwithstanding that the principal employer, contractor, and subcontractor are primarily and equally liable to the claimant for compensation provided by the Act, the latter may, by virtue of the provision of § 5231 quoted in the footnote, or otherwise, bring a common-law action in tort against such principal employer or contractor, or both. We cannot assent to the suggestion of the appellant that *Duffy* v. *Bishop Co.,* 99

Conn. 573, 122 Atl. 121, is decisive of this inquiry or significant as to the result to be reached. The record of that case discloses that the only special defense interposed was based on a provision in the contract between the defendant contractor and the subcontractor, who was brought in as a coplaintiff under relevant provisions of the statute now § 5231, that the subcontractor should be solely answerable for damages to all persons in any way arising out of or in the course of the work under the subcontract. No issue was raised as to the right of the plaintiff to maintain his tort action against the defendant; the latter, the appellant, made no mention thereof in his brief, and the opinion (p. 578) makes it clear that the matter was not considered. The specific question is now before us for the first time, but in our opinion answer thereto is derived decisively through consideration of the provisions and purposes of the statutes which are involved. The object of § 5230 is to afford full protection to workmen by preventing the possibility of defeating the Act by hiring irresponsible contractors or by parceling out the work to contractors not employing five or more workmen. *Johnson* v. *Mortenson, supra,* p. 225; *Bello* v. *Notkins,* 101 Conn. 34, 38, 124 Atl. 831. As to the provisions of § 5226, which we have quoted, it may be said, as in *King* v. *Viscoloid Co.,* 219 Mass. 420, 422, 106 N. E. 988, of a similar statute: "It was undoubtedly the intention of the legislature by that statute to take away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the Act." See also *Cox's Case,* 225 Mass. 220, 114 N. E. 281. If the employee wishes to retain a common-law right of action to recover dam-

ages for personal injuries, he must withdraw his presumed acceptance of the Compensation Act in the manner provided by § 5227 (3).

The contention of the plaintiff amounts to this, that although the statute, § 5230, makes the principal employer or contractor responsible to him for compensation equally with his immediate employer, yet such principal employer or contractor is to be denied the immunity from common-law liability which is afforded to employers generally. "Such a one-sided interpretation of the Act is not to be adopted unless the language clearly requires it. . . . By force of [§ 5230] the plaintiff was given the same rights as the immediate employees of the defendant. It is not to be assumed that the legislature intended to impose upon the general contractor greater liability to the workmen of independent contractors than to his own immediate employees. Apparently it was intended that the employee should take the statutory rights subject to the statutory limitations. He must either give the notice, and take the chances of common-law remedies, or be bound by the provisions of the Act." *White* v. *Fuller Co.*, *supra*, pp. 4, 5.

Of the many and somewhat conflicting decisions in other States, those which hold in favor of the retention of the common-law rights of employees of subcontractors as against the principal are in cases involving Compensation Acts which, as to compensation to the employee, impose primary liability upon the immediate employer and make the principal or general contractor only secondarily liable, or attach liability only when the direct employer has failed to secure compensation payments by insurance. Bradbury's Workmen's Compensation (3d Ed.) p. 264. There are several cases in which a contrary result has been reached as to the effect of similar provisions. It is unnecessary for

present purposes to comment upon or cite the numerous cases further than to refer to the comprehensive note, 58 A. L. R. p. 894 *et seq.* "Our Act contains no such provisions. Under [§ 5230], in cases falling within it, the principal employer or contractor, his subcontractor, and their respective insurers, if any, are equally responsible, so far as concerns the claimant." *Johnson* v. *Mortenson, supra,* p. 224. This important distinction deprives the cases above mentioned of any persuasive force in a determination under our statute. A verdict for the defendant Turner Company, which was clearly within § 5230, was properly directed.

As to the Aircraft Company, there is a further question—whether the work procured by it to be done for it by the Turner Company and through the latter by Scully-McDonnell & Company, the plaintiff's immediate employer, was "a part or process in the trade or business" of the Aircraft Company so as to bring it, as to the plaintiff, within § 5230 and consequent liability for compensation and immunity from tort action.

While the Turner Company was the contractor for a large part of the work of constructing the factory and other buildings, and a general contractor in that sense and in that subcontracts were let by it, a portion of the building operations, including the general excavating, foundation work, and grading, the structural steel work, installation of the heating system, and the electrical work and equipment, was let out by the Aircraft Company to other separate contractors. Apparently this situation would fall within the general statement made in *Bello* v. *Notkins,* 101 Conn. 34, 38, 124 Atl. 831, that if the owner, instead of entrusting the entire operation to a general contractor, retains in his own hands the business of erecting a building or buildings and parcels out fractions of the work of construc-

tion among separate contractors each responsible solely to the owner, the latter is to be held to be engaged for the time being in the "business" of constructing the building and a "principal employer" within the meaning of § 5230 and liable, as such, for compensation.

However, we have since indicated participation in doubts which have been expressed elsewhere as to the practicability and propriety of attempting to lay down any specific rule of general application to this particular subject, and concurrence in a view that in each case the question whether an owner is within the designation of the statute is to be regarded as largely one of degree and of fact. *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 194, 139 Atl. 778. In the same case we say (p. 195): "Any work which was an essential part of the maintenance and operation of its factory was a part of its 'trade or business,' though not a process in the actual work of manufacturing ball bearings. A helpful, but not necessarily conclusive, inquiry is whether the work in question is of a character that ordinarily would be performed in the factory by its regular employees. Such a test would ordinarily exclude from the benefits of the Act work performed for one who had a contract with the owners for making repairs or building an addition to the factory building." Still more clearly would this test exclude the erection, as here, of new buildings constituting an entire plant.

Most of the decided cases relate to the construction, and application to specific facts, of statutory definitions of "employee" resembling in varying degree that contained in § 5223 of the General Statutes, which excludes therefrom "one whose employment is of a casual nature, and who is employed otherwise than for purposes of the employer's trade or business." See cases cited in *Fox* v. *Fafnir Bearing Co., supra,* p. 194; 15 A. L. R. 736; L. R. A. 1918F, 215; 1917D, 147;

1916A, 96, 120, 247. *Boyle* v. *Mahoney,* 92 Conn. 404, 103 Atl. 127, is of this class. These are, therefore, of assistance only through a none-too-close analogy, and the diversity of view exhibited by them may be attributed largely to differences in statutory phraseology and in the factual situations involved. The decisions especially relied on by the Aircraft Company concerned variant statutory provisions, and the work involved differed in degree only—not in nature—from that held in the *Fox* case to be within § 5230. The repair of the defective boilers of a woodenware factory (*Burt* v. *Munising Woodenware Co.,* 222 Mich. 699, 193 N. W. 895), the removal of one of several smokestacks used in a steel casting business (*American Steel Foundries* v. *Industrial Board,* 284 Ill. 99, 119 N. E. 902) and the cleaning of the outside walls of a building (*Davis* v. *Industrial Accident Commission,* 297 Ill. 29, 130 N. E. 333) could well be held, as was the window-cleaning in the *Fox* case, an essential part of the maintenance and operation of the business, though not a process in the actual manufacture. The same might be said of the rigging of a new derrick in the oil field of the defendant, in *Purkable* v. *Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219, but it is also evident that in holding the defendant liable to compensation, regard was had to the absence from the Kansas Act of a provision similar to our § 5230. It appears (pp. 723, 724) that the defendant company cited a number of English cases of which *Pearce* v. *London & S. W. Ry. Co.,* L. R. (1900) 2 Q. B. 100, is stated to be typical. "A railway company let a contract to a firm to build stations for the company. A painter employed by the contractor was injured while painting a station. It was held the painter was not entitled to compensation from the railway company. The court said the primary business of a railway company is to carry passengers and goods,

the erection of stations is not a part of that business, and it would be difficult to give a better illustration of what constitutes merely ancillary or incidental work, as distinguished from the actual business carried on, than the case afforded." The Kansas court observes that the obstacle to recognition of this authority consists in the fact that the English court was then construing the Act of 60 and 61 Vict. c. 37, passed in 1897, which contained a provision resembling in substance § 5230 of our statute, but which was omitted from the British Acts of 1906 and subsequently, and had not been recognized in the compensation legislation of Kansas.

Under the Vermont statute "employment" is defined as including employment only in a trade or occupation which is carried on by the employer for the sake of pecuniary gain, while the term "workmen" does not include any person whose employment is purely casual, or not for the purpose of the employer's trade or business. It was held in *Packett* v. *Moretown Creamery Co.*, 91 Vt. 97, 99 Atl. 638, that the work of constructing a new building for a creamery company, carried on by an independent contractor, did not come within the statute so as to make the creamery company liable to an employee of the contractor. "It would be quite as reasonable to say that Flynn [the contractor] was engaged in the creamery business in contemplation of the Act as that the creamery company was engaged in the business of erecting buildings. As well say that a farmer who lets a contract to build a barn or corncrib on his premises is engaged in the business of contractor and builder, or that the business of the contractor while thus engaged is that of farming." (p. 103.) See also *Uphoff* v. *Industrial Board,* 271 Ill. 312, 111 N. E. 128; *Bargey* v. *Massaro Macaroni Co.,* 218 N. Y. 410, 113 N. E. 407. Equally, it would seem that an owner

who entrusts the entire work of construction to two or more independent contractors, instead of one, is not, invariably or ordinarily, to be regarded as thereby engaging, himself, in building as a business. Factual situations may be presented which, by reason of an effect otherwise destructive of the declared objects of provisions of this kind hereinbefore stated, as in *Bello* v. *Notkins,* may require or warrant holding such case to come within this section of the statute; but the present case discloses no such features and we hold that the construction of the factory buildings was not "a part or process in the trade or business" of the Aircraft Company within the meaning of § 5230, and that there was error in directing a verdict in its favor on that ground.

Since we have held the defendant Turner Company immune, by reason of subjection to the Compensation Act, from liability to the plaintiff in an action of negligence, consideration as to whether it might be found negligent in any respect alleged is unnecessary, but as to the Aircraft Company, the plaintiff was and is entitled to have this question submitted to the jury for determination.

The remaining question is whether the trial court was correct in directing a verdict for the defendant Livingston Company on the grounds which have already been stated. The salient facts germane to the injury are substantially undisputed. In order to secure temporary heat in the main factory building, the Aircraft Company, through its supervising architect, gave an order to the heating contractor to install a temporary plant in a shack one hundred and fifty feet or more from the main building. For the purpose of transmitting electrical current for the operation of pumps in connection with the temporary boiler, the Aircraft Company, on special order, procured the

Livingston Company to connect three wires in a transformer vault in and adjoining the north side of the building, run them through the side of the building, and drop them outside where they could be subsequently picked up by the Electric Light Company, with which the Aircraft Company had contracted to splice them to other wires and string the latter upon poles to the temporary heating plant. This work was no part of the general contract of the Livingston Company, but was a supplementary job occupying only a few hours and was completed, turned over to, and accepted by the Aircraft Company on or about December 10th, 1929. The three wires, after being connected in the transformer vault, were passed through the side of the building by removing panes of glass from a window and installing in their places pieces of wood in which the large porcelain bushings were inserted, through which the wires were passed, emerging sixteen feet from the ground. The wires were not energized until December 13th, after the dead ends had been picked up, spliced, and the wires suspended on poles by the Electric Light Company.

Of such claims of faulty installation as were made, the principal was based on a patently impossible construction of underwriter rules, and the others lacked evidential support. It was incumbent upon the plaintiff, in order to recover against this defendant, to establish: first, that it was negligent in failing to provide protection by warning signs or otherwise against exposure to danger of persons coming into proximity to the wires at the point where they emerged from the building, and that such negligence was a proximate cause of the plaintiff's injury; further, that liability continued notwithstanding that the completed work had been turned over to and accepted by the owner. Careful study of all the evidence bearing upon these

considerations satisfies us that it affords no basis for a conclusion reasonably to be reached by reasonable men other than that there was no actionable fault on the part of this defendant, requiring or warranting submission of the issue to the jury. *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn. 239, 256, 21 Atl. 675. It is undisputed that the Livingston Company did all that it was ordered and instructed by the Aircraft Company to do in the installation of the wires, turned the work over to the owner, and it was accepted by the latter a month before the painters commenced work on the exterior wall; thereafter the Livingston Company had no responsible control over this situation. As the point where the wires passed through the window was sixteen feet above the ground, and the wires, before being energized, were to be attached to poles, there was no such likelihood or apparent possibility that persons might come in contact with them at or near the building that it could reasonably be held that due care required this defendant, before turning the work over to the owner, to provide protection against such a happening. We have no occasion to determine whether such a duty would have existed if this installation had been a part and parcel of the general contract of the Livingston Company, which was uncompleted at the, time of the accident, or whether, if the Turner Company was answerable to the plaintiff in this action, it might be held to have been negligent in failing to warn or otherwise protect the painters before or when they were set at work in proximity to the wires. Whether the Aircraft Company was negligent in that or any other respect within the issues is a question which is sufficiently open to require a new trial with reference thereto.

Even if the evidence were such as to render the issue of the Livingston Company's negligence a jury ques-

tion, there would come into conclusive operation the well-established rule that where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract. *Howard* v. *Redden,* 93 Conn. 604, 612, 107 Atl. 509; 41 A. L. R. 25; 45 C. J. p. 884; 14 R. C. L. p. 107, § 42; 26 L. R. A. 504; 32 L. R. A. (N. S.) 968; L. R. A. 1915E, 766; Wharton, Negligence (2d Ed.) p. 368. The situation could not reasonably be held to fall within any of the recognized exceptions to this rule, including that which holds that where the work done and turned over by the contractor is so negligently defective as to be imminently dangerous to third persons whom he knew, or ought to know, would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if he knew, or, in view of the peculiar circumstances of the case, should have known the dangerous condition by him created, and the contractee had no knowledge of a condition or defect so concealed that reasonable inspection would not have discovered it. 45 Corpus Juris, 885; *Berg* v. *Otis Elevator Co.,* 64 Utah, 518, 231 Pac. 832.

If the condition in which the wiring was left when completed could be found to be negligently defective or dangerous, it is manifest that this condition would be as obvious to the Aircraft Company as to the Livingston Company; indeed, it seems clear that the remote circumstances which alone could render the condition dangerous could not be held reasonably to have been within the contemplation of the contractor and arose only a considerable time after the completion and delivery of the work. "By occupying and resum-

ing possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof and to know of its defects; and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe; and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury." *Howard* v. *Redden, supra,* p. 613; *Casey* v. *Wrought Iron Bridge Co.,* 114 Mo. App. 47, 89 S. W. 330; *Berg* v. *Otis Elevator Co., supra,* p. 524.

We hold, therefore, that the verdict in favor of the Livingston Company was properly directed.

There is error as to the defendant Aircraft Company and, as to it, a new trial is ordered. As to the other defendants there is no error.

In this opinion the other judges concurred.