MICHAEL GEDEON *v.* FIRST NATIONAL
SUPERMARKETS, INC.
(7706)

DALY, NORCOTT and FOTI, Js.

Argued December 14, 1989—decision released March 13, 1990

*Sydney T. Schulman,* with whom, on the brief, was *Kenneth J. Speyer,* for the appellant (plaintiff).

*Jeffrey J. Mirman,* with whom, on the brief, was *Peter Schwartz,* for the appellee (defendant).

NORCOTT, J. The plaintiff appeals following the trial court's granting of the defendant's motion for a judgment notwithstanding the verdict. The trial court based its ruling on its finding that the principal employer defense barred this action and limited the plaintiff's recovery to that provided by the Workers' Compensation Act. General Statutes § 31-275 et seq. The plaintiff claims that the trial court abused its discretion in granting the defendant's motion for judgment notwithstanding the verdict because the jury could reasonably have found that the principal employer defense did not apply and could, therefore, reasonably have returned a plaintiff's verdict. We find no error.

The jury could reasonably have found the following facts. Leaseway Transportation, Inc. (Leaseway) is in the business of leasing, supervising, maintaining and repairing tractor-trailer trucks. The defendant, First National Supermarkets (Finast), is a regional supermarket chain. Leaseway and the defendant entered into a lease-service agreement in the summer of 1982. Before entering into this contract, the defendant used its own trucks to transport its products to the various stores in its chain. Until the commencement of this contract, the plaintiff was employed by the defendant at the defendant's Windsor Locks plant as a mechanic responsible for refueling, repairing and servicing the

trucks. Once the defendant entered into its contract with Leaseway, the plaintiff became an employee of Leaseway, performing the same duties as before.

On December 6, 1983, during the early morning hours, the plaintiff slipped on ice and fell while walking with his supervisor across the parking lot near the maintenance garage. It had snowed from December 2 through December 4, for a total accumulation of approximately three inches. On December 5, it rained, and overnight the temperature dropped below freezing. The plaintiff had informed his supervisor of the slippery conditions. At the time of the plaintiff's fall, it was misting, and there was a "thin ice" upon which the plaintiff fell.

The defendant moved for a directed verdict claiming that the plaintiff had not proven notice of the specific defect. It also claimed that the action against the defendant was barred by the principal employer defense because the defendant controlled the situs of the fall and because the plaintiff's work is part or process of the defendant's business. The court reserved judgment on that motion and submitted the case to the jury. The jury returned a verdict for the plaintiff for $74,211.33 and answered three special interrogatories. In order to determine whether the principal employer defense applied, the jury was asked: (1) Did the defendant prove, by a preponderance of the evidence, that the relation of principal employer and contractor existed between the defendant and Leaseway in work done wholly or in part for the defendant Finast? (2) Did the defendant prove, by a preponderance of the evidence, that the plaintiff's fall occurred on premises controlled by the defendant Finast? (3) Did the defendant prove, by a preponderance of the evidence, that the work performed by Leaseway was a part or process in the trade or business of the defendant Finast? If the jury answered all three in the affirmative, the action would

be barred. The court directed the jury to answer yes to the first question, and the jury answered no to the second and third questions.

The defendant filed a motion to set aside the verdict and for judgment in accordance with the motion for a directed verdict. On December 20, 1988, the trial court granted the defendant's posttrial motions and rendered judgment for the defendant. The plaintiff then filed this appeal.

The plaintiff claims on appeal that the trial court erred in granting a judgment notwithstanding the verdict because the jury could have properly found (1) that the defendant had notice of the defect, (2) that the work performed by the plaintiff was not part or process of the defendant's business, and (3) that the plaintiff did not work on premises controlled by the defendant for purposes of the principal employer defense. The plaintiff also claims that the jury's finding of lack of control for the principal employer defense is not inconsistent with a finding that responsibility existed for civil liability purposes. We find no error.

This court must review the action of the trial court in the light most favorable to the plaintiff. *Brown* v. *K.N.D. Corporation,* 205 Conn. 8, 16 n.5, 529 A.2d 1292 (1987); *Bartholomew* v. *Catania,* 161 Conn. 130, 132, 285 A.2d 350 (1971). Motions to remove the verdict from the jury " 'are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion.' " *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982). " 'If, on the evidence as presented and under the pleadings, the jury could have reasonably found in accordance with the verdict as rendered, then it cannot be set aside as against the evidence.' " *Kerrigan* v. *Detroit Steel Corporation,* 146 Conn. 658, 659–60, 154 A.2d 517 (1959); see also *Brown* v. *K.N.D. Corporation,* supra.

We first address the plaintiff's claim that the trial court erred in setting aside the plaintiff's verdict on the ground that the jury could reasonably have found only that the action against the defendant was barred by the principal employer defense. "It is, of course, well settled that where there exists the relationship of employer and employee within the Workmen's Compensation Act the employee may recover for injuries sustained in the course of his employment only as provided by the act. The employer has no common-law liability to his employee." *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 531, 72 A.2d 655 (1950). "The principal employer defense requires that three elements must be satisfied: (1) The relation of principal employer and contractor must exist in work wholly or in part for the former;[1] (2) the work must be on or about premises controlled by the principal employer; and (3) the work must be a part or process in the trade or business of the principal employer." (Footnote added.) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* 6 Conn. App. 60, 72, 504 A.2d 1376, cert. denied, 199 Conn. 808, 508 A.2d 769 (1986). Each of these elements ordinarily constitutes a question of fact to be determined by the jury. *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 136, 157 A. 860 (1932); see also *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* supra. Only where the evidence permits "no real dispute as to the existence of these conditions," can a verdict be directed. See *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* supra.

The jury heard testimony that the plaintiff performed the same work as a Leaseway employee that he had as a Finast employee; he repaired, refueled and main-

---

[1] The plaintiff does not challenge the trial court's direction to the jury that it must answer this first question in the affirmative. There is no question that this condition was met. "[T]he contention of the hired general contractor that it is the principal employer is usually unchallenged." *Ranta* v. *Bethlehem Steel Corporation,* 271 F. Sup. 286, 289 (D. Conn. 1967).

tained the trucks. The Leaseway trucks were leased to and used by Finast to carry its freight from the distribution center to its stores. Some trucks displayed the Finast logo while some displayed the Leaseway logo. This activity all took place at the Finast Windsor Locks plant. The plant consisted of offices for the various business departments, including accounting and legal departments, a distribution warehouse, and a maintainance and repair garage, which was leased to and used by Leaseway to service the trucks. Leaseway leased specified areas within which to perform its maintenance services, but the maintenance of these areas was the responsibility of Finast. Leaseway paid rent for the space that it leased from Finast, and, hence, a landlord-tenant relationship existed between the two companies. Finast could not enter these specified areas at will. Leaseway paid for its own utilities and was required to carry its own liability insurance.

If anything needed to be repaired, either inside the maintenance garage or outside on the plant facilities, Finast was responsible for the repairs, but Leaseway would perform routine repairs on its leased areas. Finast did not exercise any supervisory control over Leaseway employees and had no authority to direct hiring, firing or discipline of those employees. All of the Leaseway equipment was its own. All of the services performed by Leaseway took place in the areas leased by Leaseway from Finast. Leaseway was authorized under the contract, however, to perform its services in other facilities away from these premises if it so chose. The drivers were employed by Finast, and Finast agreed to reimburse Leaseway if any damage was done to the Leaseway trucks. Leaseway had the authority, if a driver were to abuse the truck, to direct Finast to remove him from his position as a truck driver. Finast was responsible for plowing, sanding and salting all of the outside areas of the plant including the area leased to Leaseway.

The jury found, by means of special interrogatories, that the plaintiff's work was not part or process of Finast's business and that Finast did not control the work premises of the plaintiff for the purposes of the principal employer defense, and it returned a general verdict for the plaintiff. "The jury's verdict must stand '"if [it is] one at which honest men acting fairly and intelligently might arrive reasonably . . . even though the opinion of the trial court and this court be that a different result should have been reached." . . .' " (Citations omitted.) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* supra, 66.

In granting the motion for judgment notwithstanding the verdict, the trial court correctly held that the work performed by the plaintiff was "part or process" of the defendant's trade or business, and that the jury could not reasonably have found otherwise. This condition includes "all those operations which enter directly into the successful performance of the commercial function of the principal employer. If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of his business, it is a part or process in his business." *Crisanti* v. *Cremo Brewing Co.,* supra, 532; *Ranta* v. *Bethlehem Steel Corporation,* 271 F. Sup. 286, 288 (D. Conn. 1967). This condition is not limited to main tasks performed in the principal employer's business, but rather, includes those tasks that are necessary to the routine functioning of a business. *King* v. *Palmer,* 129 Conn. 636, 641, 30 A.2d 549 (1943).[2]

---

[2] *King* v. *Palmer,* 129 Conn. 636, 641–42, 30 A.2d 549 (1943), is the leading case defining the term "part or process." That case sets up the distinction between acts that constitute part or process and acts that do not, based on whether the acts constitute temporary maintenance or major replacement.

In addressing the issue of control of the premises, the trial court found that the jury could not have reasonably found anything other than that the defendant controlled the work areas of the fall for purposes of the principal employer defense. The area in the principal employer's control, in the context of this defense, is "the area in which an accident must happen in a more inclusive way than by use of phrases such as 'in his possession' or 'owned by him.' " *Ranta* v. *Bethlehem Steel Corporation,* supra, 289. Control of the work area of the plaintiff is the relevant consideration. *Alpha Crane Service, Inc.* v. *Capitol Crane Co.,* supra, 74. "The emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident." *Crisanti* v. *Cremo Brewing Co.,* supra, 535. " 'In general, to have "control" of a place is to have the authority to manage, direct, superintend, restrict or regulate.' " *Mancini* v. *Bureau of Public Works,* 167 Conn. 189, 198, 355 A.2d 32 (1974). At the time of the accident, the plaintiff must have been working " ' "on or in or about" ' " premises controlled by the principal employer. *Crisanti* v. *Cremo Brewing Co.,* supra; see also *Bates* v. *Connecticut Power Co.,* 130 Conn. 256, 260, 33 A.2d 342 (1943). "The word 'about' being held to be equivalent at best to 'in close proximity to.' " *Wilson* v. *Largay Brewing Co.,* 125 Conn. 109, 112, 3 A.2d 668 (1939).

The purpose for this requirement is that " '[m]ost compensable injuries are due to conditions of employment the danger from which could be prevented or minimized by sufficient oversight or control. The underlying purpose of the restriction as to the place of employment . . . was obviously to limit liability [under the Workers' Compensation Act] to those situations where such conditions might be assumed to be largely within the control or observation of the principal

employer.' " *Crisanti* v. *Cremo Brewing Co.*, supra; *Wilson* v. *Largay Brewing Co.*, supra. "The idea behind these limitations was that to hold the principal employer responsible [under the Workers' Compensation Act] the work must have been largely within his control or observation." *Bates* v. *Connecticut Power Co.*, supra, 259.

In this case, there was no question that Leaseway's facilities were located in the Finast distribution plant, that Finast was responsible for the control of the entire plant, exclusive of the building used by Leaseway to repair and maintain the vehicles, and that Finast was responsible for snow removal. The jury could have reasonably concluded only that when the plaintiff fell, he was working "on or in or about" premises controlled by the defendant.

The trial court was therefore correct in rendering judgment notwithstanding the verdict and limiting the plaintiff's relief to recovery under the Workers' Compensation Act.[3]

There is no error.

In this opinion the other judges concurred.

[3] Because we conclude that the trial court was correct in finding that the plaintiff's action was barred by the principal employer defense, we need not address the plaintiff's other claims.