ALPHA CRANE SERVICE, INC., ET AL. *v.*
CAPITOL CRANE COMPANY ET AL.
(2835)
(2836)
(2837)

PAUL J. APARO, ADMINISTRATOR (ESTATE OF
STEVEN J. PALMERI) *v.* UNITED TECHNOLOGIES
CORPORATION ET AL.
(2838)
(2839)
(2840)
(2841)

SPALLONE, DALY and BIELUCH, Js.

Argued October 8, 1985—decision released January 21, 1986

*Jeremiah M. Keefe,* with whom was *James E. Kernan,* for the appellant in both cases (defendant Wetherell Corporation).

*William R. Davis,* with whom was *Michael C. Jainchill,* for the appellant in the second case (plaintiff Paul J. Aparo).

*Stephen C. Lattanzio,* with whom, on the brief, was *Albert G. Murphy,* for the appellees in the first case (plaintiff Alpha Crane Service, Inc., et al.).

*Joseph G. Lynch,* with whom, on the brief, were *John W. Lemega* and *Karen E. Young,* for the appellee in both cases (defendant Capitol Crane Company).

*John R. FitzGerald,* with whom were *Constance L. Epstein* and, on the brief, *James T. Haviland II,* for the appellee in both cases (defendant United Technologies Corporation).

BIELUCH, J. These appeals arise out of the denial by the trial court of seven motions to set aside various verdicts rendered in two actions consolidated for trial. The two cases are the result of a construction accident in which a crane operator died and a crane was damaged. The appellants have claimed a total of sixteen errors on appeal. We find error.

Because of the complex nature of these appeals, preliminary facts are set forth as follows, and detailed facts will be outlined in the discussion of specific issues. The jury could reasonably have found the following facts. The defendant United Technologies Corporation (UTC) contracted with the defendant Wetherell Corporation for the latter to dismantle and transport to a storage area large exhaust ducts from UTC's Wilgoos Gas Turbine Laboratory. In connection with that contract, Wetherell hired the defendant Capitol Crane Company to assist by lowering the heavy pieces of ductwork to the ground. The size and weight of the dismantled ductwork, however, made it necessary to engage a second crane to assist in the operation. For that purpose, the plaintiff Alpha Crane Service, Inc., was employed.

On September 5, 1978, while lowering an elbow section of ductwork weighing approximately twenty tons, the choker cable suspending the elbow from the boom of Alpha's crane broke. The elbow dropped onto the cab of Alpha's crane, crushing it, and killing the crane operator, Steven J. Palmeri, the plaintiff Aparo's decedent.

As a result of the accident, two separate actions were instituted against the defendants UTC, Wetherell and Capitol jointly: (1) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.* (Alpha's case),[1] an action for damage to the crane; and (2) *Aparo* v. *United Technologies Corporation* (Aparo's case), an action for the wrongful death of Steven J. Palmeri. The defendants responded to these actions with an avalanche of answers, special defenses, cross claims and counterclaims.

Aparo's case and Alpha's case were consolidated for trial. The jury, in two separate phases of deliberation,

---

[1] Although Alpha Crane Service, Inc., was the named plaintiff, the actual owner of the crane was the plaintiff William T. Palmeri. Consequently, the subsequent jury verdict was rendered in favor of the plaintiff William T. Palmeri only.

found only Wetherell to be liable to the plaintiffs. In addition, Capitol and UTC were each awarded damages from Wetherell on their cross claims. Wetherell and Aparo filed motions to set aside these bifurcated verdicts on various grounds. The motions were denied and appeals taken from the denials.

I

At trial, UTC called Robert DeBenedictis to testify as an expert witness on crane and rigging safety. UTC first disclosed its intent to call DeBenedictis as a witness on Monday, September 12, 1983, approximately three weeks into the trial. The disclosure was made as a supplemental response to an interrogatory, propounded by Aparo about three years earlier, requesting the names of all experts expected to testify, and the subject matter of their anticipated testimony.

Four days later, on Friday, September 16, 1983, DeBenedictis was called to the stand and counsel for Aparo immediately objected to his offered testimony on the ground of insufficient notice of UTC's intended offer to allow proper preparation for cross-examination. After a lengthy series of arguments and a conference in chambers, the court ruled that DeBenedictis would be allowed to testify on the following Tuesday when court reconvened. The court also granted an early adjournment that day to allow the parties to depose DeBenedictis in the courtroom during the afternoon, four days prior to his testimony.

Aparo now claims that the court erred in permitting DeBenedictis to testify at all. In support of this claim, Aparo points to Practice Book § 231 which provides for sanctions where a party has "failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead." Aparo asserts that by its delay in supplementing its disclosure, UTC failed to answer the

interrogatory fairly and thereby prejudiced Aparo's ability to prepare his case. In response, UTC contends that DeBenedictis was disclosed fairly to Aparo as soon as the decision was made to call him as a witness. Although, by the admission of counsel for UTC, DeBenedictis had been in court earlier in the trial, and although he had examined some of the exhibits during court recesses on those occasions, UTC did not decide to call him to the stand until September 8, 1983, four days before his disclosure. At that point, the supplemental disclosure was prepared and filed on the next court day. Aparo did not object to the witness until DeBenedictis took the stand four days later, despite the fact that he had prepared a brief on this issue in anticipation of an offered objection.

The court properly concluded that "no one here is without fault in this situation." Aparo could have given far more notice of his objection than he did, but UTC was also at fault for failing to prepare its case fully and to disclose its expert despite having had more than three years in which to do so.

The decision to impose sanctions such as the possible exclusion of DeBenedictis' testimony rested in the trial court's discretion. *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 107, 476 A.2d 1074 (1984). Here, the court's decision to allow the testimony, after a deposition of the witness, adequately served to inform opposing counsel of both the existence of the witness, and the nature of his testimony. Further, his testimony before the jury was limited strictly to the scope of the deposition. Under these circumstances, it cannot be said that the plaintiff was prejudiced or that the trial court abused its discretion in ruling as it did. Although sanctions should be imposed to deter those who would use trial-by-ambush tactics; Id., 108; the trial court is in the best position to assess the intent behind the

behavior of the offending party and, therefore, its decision must be given great weight and deference. See id.

## II

Aparo's second claim of error is that the court erred in denying his motion to set aside the jury's verdict in favor of the defendant UTC. " 'The ruling of the trial court on a motion to set aside a verdict is entitled to great weight.' *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 200, 292 A.2d 912 (1972) . . . ." *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982). The jury's verdict must stand " 'if [it is] one at which honest men acting fairly and intelligently might arrive reasonably . . . even though the opinion of the trial court and this court be that a different result should have been reached.' *Horvath* v. *Tontini,* 126 Conn. 462, 464, 11 A.2d 846 (1940)." *Jacobs* v. *Goodspeed,* 180 Conn. 415, 417, 429 A.2d 915 (1980); see also *Trzcinski* v. *Richey,* 190 Conn. 285, 299, 460 A.2d 1269 (1983). In the present case, the transcript reveals that the testimony, although not entirely favorable to UTC, was susceptible of the reasonable interpretation that Wetherell was liable to Aparo to the exclusion of UTC. Consequently, the trial court was correct in refusing to set aside the jury verdict in favor of UTC.

## III

Despite the order of the court, *Dupont, J.,* consolidating the *Alpha* and *Aparo* cases for trial, counsel for Wetherell moved, at the commencement of jury selection, on August 9, 1983, that the trial of the cross claims and counterclaims between the respective defendants be severed from the trial of the plaintiffs' actions. The court, *Hon. Harold Missal,* state trial referee, ordered that the cases be tried together unless Judge Dupont's permission to sever was obtained. Although the record does not reflect whether such permission was, in fact, requested, the motion to sever was renewed before

the commencement of evidence, was denied again, this time unconditionally, and an exception was taken to that ruling.

From August 24, 1983, until September 21, 1983, evidence was taken at trial. On September 15, 1983, Judge Missal ruled that the jury's deliberations would be separated into different parts, the first of which would be to consider Aparo's case against the three defendants. The court reserved deliberation on all other claims between the various parties in the Aparo and Alpha cases until after a verdict was reached as to the plaintiff's claims in Aparo's suit.

On September 30, 1983, the jury completed its first deliberation and returned a verdict in favor of the plaintiff Aparo, solely against the defendant Wetherell, in the amount of $700,000. Thereafter, the court submitted all of the remaining issues to the jury on October 4, 1983. At this time the court submitted the first count of UTC's two cross complaints to the jury for a determination of damages only. UTC's motions for summary judgment as to liability on these counts had been granted one day earlier, at which time the remaining counts were withdrawn. The court also directed a verdict for Capitol on the first count of its cross complaint against Wetherell and left the jury to determine damages on that count.[2] In the Alpha case, the jury found Wetherell liable to the plaintiff Palmeri in the amount of $14,000 for damages to the Alpha crane. The jury also found Wetherell to be liable to indemnify Capitol

---

[2] It should be noted that the parties and the court seem to have blurred the lines demarking the two cases at this point. Although the parties filed separate cross complaints and counterclaims in Aparo's case and Alpha's case, the court charged the jury to return a single verdict on UTC's claims against Wetherell and to return a single verdict on Capitol's claims against Wetherell. The court also left the jury to determine both liability and the amount of damages due on the second count of Capitol's cross complaint against Wetherell.

in the amount of $28,655.95 and to indemnify UTC in the amount of $91,539.94. Wetherell's motions to set the verdicts aside were denied.

Wetherell claims error in that: (1) the court denied its motion to sever the plaintiffs' trials from the defendants' trials on the cross claims and counterclaims; and (2) the court, having denied the motion to sever the trials, then separated the various issues for the jury's individual consideration after evidence had been heard on all aspects of the cases. We disagree with Wetherell. With regard to the first of these issues, it has long been held that the decision to consolidate or sever the trial of different actions is within the sound discretion of the court, and that decision will not be reversed in the absence of a clear abuse of discretion. *Rode* v. *Adley Express Co., Inc.,* 130 Conn. 274, 277, 33 A.2d 329 (1943).

In the present case, Wetherell advances three arguments in support of its claim that such an abuse was present. First, Wetherell argues that the sheer volume and complexity of the issues in these cases mandated severance of the trial of the cross claims and counterclaims from that of the plaintiffs' claims. This argument is without merit. In fact, it is precisely the complex nature of these cases which made consolidation appropriate. The trial, which lasted four weeks, would have been duplicated unnecessarily had the motion to sever been granted. "The public's interest in avoiding unnecessary litigation and conserving scarce judicial resources is too powerful a factor to ignore." *Nielsen* v. *Nielsen,* 3 Conn. App. 679, 684, 491 A.2d 1112 (1985).

Second, Wetherell asserts, the admission of evidence regarding insurance, relevant to the cross claims of UTC against Wetherell, acted to its prejudice since this evidence is inadmissible in negligence cases, such as the plaintiffs' cases here. In *Magnon* v. *Glickman,* 185

Conn. 234, 440 A.2d 909 (1981), the court held that "[g]enerally, in negligence actions, evidence that the defendant carries liability insurance is inadmissible. . . . This rule, however, is not without exception. See, e.g., *Gigliotti* v. *United Illuminating Co.,* 151 Conn. 114, 122, 193 A.2d 718 (1963) ('the fact that the contract contained references to insurance could not operate to exclude those portions if they were otherwise admissible and of probative value.') . . . ." (Citations omitted.) *Magnon* v. *Glickman,* supra, 242.

In the present case, the liability insurance clauses in the contract, as well as the testimony cited by Wetherell in its brief, were, as Wetherell concedes, admissible with regard to UTC's cross claims. Further, the insurance provisions at issue pertained to Wetherell's contractual duty to indemnify UTC and to make UTC an additional insured on Wetherell's liability policy. In only three questions on direct examination was Wetherell's obligation to obtain liability insurance discussed. It should be readily apparent that severing such a complex trial so as to prevent approximately two transcript pages, related to a side issue, out of about 2,300 from reaching the ears of the jury would be unreasonable.

Finally, Wetherell argues that the pleadings were not closed with respect to the cross complaints at the time of trial in violation of Practice Book § 253.[3] This citation is inapposite. Wetherell is confusing the placement of a case on the trial list with the actual commencement of a trial. This claim purports to relate to the assignment of these cases for trial, but Wetherell's objection applies only to their earlier placement on the trial list before the side issues were closed. Furthermore, this pleading delay was due primarily to

---

[3] Practice Book § 253 provides: "Except as otherwise provided in these rules, only those cases in which the pleadings have terminated in an issue or issues of fact decisive of the merits of the case, or issue of fact to the jury, and hearings in damages on defaults shall be placed on the trial list."

Wetherell's own negligence in filing its answer and special defenses.[4] Also, there is some uncertainty about the applicability of Practice Book § 253 to the pleadings on cross claims between defendants. "It is not clear whether all pleadings, including those on cross-complaints and third party actions, have to be closed before a trial list claim may be made. Since the rule carefully says 'terminated in an issue or issues of fact,' the authors believe a trial list claim can be filed as soon as the pleadings are closed between the plaintiff and the defendant." 1 Moller & Horton, Connecticut Practice (2d Ed. 1979) p. 324.

The crucial question is whether all pleadings were closed before the commencement of trial. Wetherell's statement that "[a]t the time of trial . . . the pleadings were not closed with respect to the cross-complaints" is in error and is misleading. The trial of a jury case commences when a jury panel is selected and sworn; see *State* v. *Roy,* 182 Conn. 382, 385, 438 A.2d 128 (1980); and the trial of a court case commences with the beginning of evidence; see *State* v. *Flower,* 176 Conn. 224, 225–26, 405 A.2d 655 (1978). This claim of Wetherell's is also without merit.

We, therefore, cannot conclude that the court abused its discretion in refusing to separate the various claims and issues at trial.

With regard to Wetherell's claim that the court, having refused to sever the trial, erred in separating the issues to be presented to the jury, no arguments have been raised beyond those discussed above. In essence, Wetherell claims that the submission of Aparo's case to the jury after it had heard testimony regarding lia-

[4] In fact, on August 9, 1983, at the commencement of jury selection, counsel for Wetherell was ordered to file its answers to the cross claims of UTC and Capitol by August 16, 1983, so the trial could commence on August 23, 1983. Wetherell's answers were filed on August 15, 1983, before the jury was sworn and before the presentation of evidence actually commenced.

bility insurance was improper.[5] Since we have concluded that this was not error, we find no merit in this claim.

## IV

Wetherell has also raised four claims of error with regard to its special defense that it was a principal employer, under General Statutes § 31-291, and, as such, was exempt from liability, and that Aparo's exclusive remedy was under the Workers' Compensation Act.[6] Wetherell claims that the court erred (1) in refusing to direct a verdict against the plaintiff Aparo, and for it, on this special defense; (2) in giving incorrect

[5] Wetherell's argument here seems to be that unless the court was willing to sever the trials entirely, it should have made no other efforts to minimize the difficulty of the jury's task of deliberation. This line of reasoning appears to be appellate sophistry. In point of fact, Wetherell argued at trial for a separation of the issues to be presented to the jury along different lines. Counsel told the trial court that "I do agree that it makes some sense to simplify all of this for the jury, as it would be a very complex thing to have them consider all of the cases together."

[6] General Statutes § 31-291 provides: "When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, such principal employer shall be liable to pay all compensation under this chapter [Workers' Compensation Act] to the same extent as if the work were done without the intervention of such contractor or subcontractor."

General Statutes § 31-284 (a) provides: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits."

instructions to the jury on the elements of the principal employer defense; (3) in submitting factual questions to the jury with insufficient and incomplete instructions on this defense; and (4) in striking Wetherell's special defense of principal employer to UTC's cross complaint.

The principal employer defense requires that three elements must be satisfied: (1) The relation of principal employer and contractor must exist in work wholly or in part for the former; (2) the work must be on or about premises controlled by the principal employer; and (3) the work must be a part or process in the trade or business of the principal employer. *Mancini* v. *Bureau of Public Works,* 167 Conn. 189, 193, 355 A.2d 32 (1974); *Kasowitz* v. *Mutual Construction Co.,* 154 Conn. 607, 611, 228 A.2d 149 (1967).

Each of these elements ordinarily constitutes a question of fact to be determined by the jury. *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 136, 157 A. 860 (1932); see also *Mancini* v. *Bureau of Public Works,* supra, 195; *Grenier* v. *Grenier,* 138 Conn. 569, 571, 87 A.2d 148 (1952). Where the evidence permits no real dispute as to the existence of these three conditions, a verdict may be directed. See *Gigliotti* v. *United Illuminating Co.,* 151 Conn. 114, 118, 193 A.2d 718 (1963). As with any case, however, a directed verdict is justified only if, "on the evidence, the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed." *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984).

In the present case, Wetherell asserts that each element of this defense was proven as a matter of law. We agree. The first element of the principal employer defense is that Wetherell and Alpha were in a principal employer and contractor relationship in the work performed by Alpha and Capitol for Wetherell. "[T]he contention of the hired general contractor that it is the

principal employer is usually unchallenged." *Ranta* v. *Bethlehem Steel Corporation*, 271 F. Sup. 286, 289 (D. Conn. 1967).

The various pleadings admit and the evidence establishes that the decedent was a crane operator for Alpha which had been retained by Capitol on behalf of Wetherell under the latter's contract with UTC to dismantle and remove the ductwork located at the Wilgoos Gas Turbine Laboratory on property belonging to UTC. Wetherell had contracted with UTC to "[p]rovide all labor, materials, equipment, and perform all work required for removal of X-219 ducting at the Wilgoos Laboratory." Wetherell is a mechanical and electrical contractor which does piping installation and demolition. The dismantling of the ductwork was performed by Wetherell's employees. Since the ducts in this instance were suspended overhead, the use of a crane was required to lower the pieces of cut ductwork to the ground. Wetherell engaged Capitol, a small crane service company, for the use of its crane. On the date of the accident, it was necessary that an additional crane be engaged to assist Capitol in the lowering of heavy pieces of the ductwork. Wetherell authorized Capitol to engage Alpha to supply the second crane. Capitol and Alpha were both contractors engaged by Wetherell as principal employer under its contract with UTC and the jury in this case could not have reasonably and legally reached any other conclusion from the evidence.

With regard to the second element of the principal employer defense, Wetherell was required to prove that its work was on or about premises controlled by it. Again, the pleadings admit and the evidence establishes this as a matter of law.

The term "control" in this context has a specific meaning. It is merely descriptive of the work area and "is used instead of such words as 'owned by him' or

'in his possession' in order to describe the area in a more inclusive fashion. The emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident." *Crisanti* v. *Cremo Brewing Co.,* 136 Conn. 529, 535, 72 A.2d 655 (1950); see also *Ranta* v. *Bethlehem Steel Corporation,* supra.

The main purpose of this condition for principal employer responsibility under the Workers' Compensation Act is to allow recovery for accidents occurring in the work area which could be prevented or minimized by sufficient oversight or control. *Crisanti* v. *Cremo Brewing Co.,* supra. The contract between UTC and Wetherell required that the contractor remove "X-219 ducting at the Wilgoos Laboratory." That provision defined the area of control to be the Wilgoos Laboratory, including the site of the accident in which Aparo's decedent was killed. There is no question raised in the evidence to disprove Wetherell's contract obligation to remove the ductwork at the place where the dismantled piece fell on Alpha's crane when the choker cable snapped. To say that the premises were owned by UTC, with access thereto limited by its security program, does not create a reasonable factual question concerning the area under Wetherell's control pursuant to its contract requiring resolution by the jury. Control of the work area, and not of the work, as raised by paragraph nine of the plaintiff's complaint, is the requirement of this special defense of principal employer claimed by Wetherell. Once again, no reasonable question of fact remained for the jury to determine on this second element of the principal employer special defense.

The final element of the principal employer defense is that the work must be a "part or process" in the trade or business of the principal employer. This condition has been defined as including "all those operations

which enter directly into the successful performance of the commercial function of the principal employer. If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of his business, it is a part or process in his business." *Kasowitz* v. *Mutual Construction Co.*, supra, 613, quoting *Crisanti* v. *Cremo Brewing Co.*, supra, 532.

It has long been held that this condition is not limited to the main tasks performed in the principal employer's trade or business. Rather, those tasks which are necessary to the routine functioning of a business are also included within the scope of this element of the defense. In *Hoard* v. *Sears Roebuck & Co., Inc.*, 122 Conn. 185, 188 A. 269 (1936), the removal of rubbish by a contractor was found to be "essential to the operation of the store and . . . thus part of the trade or business of the defendant." Id., 189. Similarly, in *Massolini* v. *Driscoll*, 114 Conn. 546, 159 A. 480 (1932), the driver of a team of horses, employed by a contractor to the city of Hartford for the purpose of carting away rubbish, was killed when he was kicked by one of the horses with which he was working. The court found the city liable in compensation as a principal employer, holding that the scope of the part or process requirement included "the conduct of the usual affairs of the [public] corporation, and such as commonly engage the attention of its officers." Id., 552. Finally, in *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 139 A. 778 (1928), the employee of a contractor who was hired to clean the windows of the defendant's factory was injured. The court concluded that such work was "a part of the work of keeping the employer's factory in running condition, and [was] therefore a part of its 'trade or business' though not directly connected with any manufacturing process." Id., 195.

From these cases it is clear that the part or process element is intended to include all of those tasks which are required to carry on the principal employer's business. In the present case, Wetherell's business, as a mechanical and electrical engineering company, was to dismantle the ductwork at the Wilgoos Laboratory. A necessary and expected part of that business was that the dismantled ducts had to be lowered to the ground. Thus, the use of cranes such as those operated by Capitol and Alpha was a part or process in Wetherell's trade or business. No reasonable question of fact existed for the jury to determine on this final element of the principal employer defense.

Since no question of fact existed with regard to any of three elements of the principal employer defense, the court erred in failing to grant Wetherell's motion for a directed verdict on its second special defense that it was subject exclusively to the remedies available to Aparo under the Workers' Compensation Act.[7]

## V

Wetherell has also claimed error in the court's decision to strike Wetherell's principal employer defense directed to UTC's cross complaint. Wetherell asserts that by permitting UTC's cross claim for indemnity against Wetherell, the court was allowing Aparo, indirectly, to sue Wetherell on a tort claim which would otherwise be precluded by the Workers' Compensation Act. Wetherell, however, concedes that an indemnity agreement, as was present in this case, may override the provisions of the Workers' Compensation Act.[8] Wetherell argues, instead, that another of its special

[7] Wetherell has also claimed error in the court's instructions to the jury on the principal employer defense. Our conclusion that the court erred in submitting Aparo's case to the jury renders any discussion of the court's instructions unnecessary.

[8] See *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 94–96, 429 A.2d 808 (1980).

defenses—that UTC had breached its contract—defeated any claim that the indemnity agreement, which was part of that contract, superseded the Workers' Compensation Act. Wetherell insists that for the purpose of UTC's motion to strike the principal employer defense, all facts in all of its special defenses must be accepted as true. That is simply not the law in this state. When a single special defense is subjected to a motion to strike, only the facts alleged by that special defense are accepted as true. *Santoro* v. *Kleinberger,* 115 Conn. 631, 633, 163 A. 107 (1932); *Irving Trust Company* v. *Atwood,* 15 Conn. Sup. 114 (1946); see also 1 Stephenson, Connecticut Civil Procedure (2d Ed.) § 116, p. 476. Consequently, the court was correct in granting UTC's motion to strike Wetherell's principal employer special defense.[9]

## VI

In both *Aparo* and *Alpha,* UTC and Capitol filed cross claims against Wetherell by which they alleged that Wetherell had agreed to indemnify them from liability arising out of accidents such as the one involved in these cases. UTC's claim was based on an express provision in its contract with Wetherell while Capitol's claims were based on the primary liability principle of *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 207 A.2d 732 (1965), and on an implied contract.

The trial court granted UTC's motion for summary judgment as to liability on its indemnity claim[10] and left to the jury the determination of damages. The court

---

[9] We also note that Wetherell has raised a claim of error related to the court's granting of Capitol's motion to strike Wetherell's principal employer defense. That motion was properly granted for the same reasons as was UTC's. Although Capitol's claim for indemnity was one based upon an implied indemnity agreement, we hold that such a claim, as with a contractual indemnity agreement, can override the provisions of the Workers' Compensation Act.

[10] Wetherell's first claim of error with regard to this procedure is that the court erred in granting the motion because it was presented orally after

also directed a verdict for Capitol on its claim for indemnity based on primary liability, and left it to the jury to determine damages in that matter. On Capitol's claim for indemnity on implied contract, the court left both liability and damages for the jury to decide.

With respect to the summary judgment in favor of UTC, Wetherell has claimed that the court erred in granting summary judgment (1) because, as a matter of law, the contract did not entitle UTC to the damages which it claimed,[11] and (2) because a factual issue remained with regard to Wetherell's special defense that UTC itself had breached the contract. We conclude that the court did err in part in granting UTC's motion, and in denying Wetherell's motion for a directed verdict.

Wetherell's first claim is that the court erred in concluding, as a matter of law, that the indemnity agreement covered attorney's fees and costs of defense, and damages to UTC's own property. That agreement provided, in pertinent part, that Wetherell agreed to indemnify UTC from "*any* liability, claim of liability, expense, causes of action, loss or damage *whatsoever* for *any* injury . . . to *any* person or property in the performance of this Contract, unless such injury is caused by the sole negligence of United, it being the intent of this agreement to protect and indemnify United from *any* and all loss arising out of or in connection with the Work performed under this Contract." (Emphasis added.)

the first jury verdict was obtained. This, Wetherell argues, was not in compliance with Practice Book §§ 378–386.

Wetherell, however, never raised this objection at trial. Although the merits of the motion were strenuously debated, the propriety of the motion was not disputed. We will not review a claim which was not raised before the trial court. Practice Book § 3063.

[11] Wetherell also has claimed that just as the court erred in granting UTC's motion for summary judgment on this ground, the court erred in denying Wetherell's own motion for a directed verdict. Since these claims raise, essentially, the same point, they shall be dealt with as one.

As with the term "all," the term "any" constitutes the broadest scope of coverage possible. See *Cirrito* v. *Turner Construction Co.,* 189 Conn. 701, 709, 458 A.2d 678 (1983). In the present case, Wetherell agreed to indemnify UTC from *any* "expense, causes of action, loss or damage whatsoever." In the absence of express contractual language, however, the term "expense" has been held to encompass only attorney's fees incurred in defense of the original action, and not in pursuing the remedy of indemnification. *Burr* v. *Lichtenheim,* 190 Conn. 351, 363–64, 460 A.2d 1290 (1983). In the present case, both of these issues were litigated. Since no express provision in the contract entitled UTC to attorney's fees incurred in pursuing its right to indemnification from Wetherell, we conclude that the court erred insofar as it granted UTC's motion for summary judgment as to Wetherell's liability for those fees attributable to UTC's pursuit of indemnification from Wetherell, and insofar as it failed to direct a verdict for Wetherell regarding those fees.

Wetherell's contract with UTC did, however, indemnify UTC from any "loss or damage whatsoever" to any "person or property." This language is in accord with the parties' express "intent" that UTC was to be protected "from any and all loss arising out of . . . the Work performed under this Contract." Under these circumstances, we conclude that UTC was entitled to damages for any destruction of its own property pursuant to the contract and that no genuine issue of material fact remained on this issue.

Wetherell's second claim with regard to UTC's motion for summary judgment is that the court erred in granting that motion when Wetherell had alleged, by way of special defense, that UTC had breached the contract.[12] Wetherell asserts that if this defense had

[12] The alleged breach was UTC's failure to provide Wetherell with blueprints, plans and specifications necessary to complete the job.

been proved, then UTC would not have been entitled to rely on the indemnity provision in the contract.

The simple answer to this argument is that the jury, in its first phase of deliberations, and prior to UTC's motion for summary judgment, considered, as a possible basis for finding UTC negligent, the issue of whether it breached its duty to provide plans, blueprints and specifications. The jury, however, found that UTC was not negligent. Thus, the trial court was correct in concluding that no genuine issue of material fact existed with regard to this special defense.

Wetherell's final claims of error relate to the trial court's decision to direct a jury verdict in Capitol's favor on its cross complaint for indemnity from the party primarily liable, leaving damages for the jury to determine[13] and to the trial court's decision to deny Wetherell's motion for a directed verdict against Capitol on the count of Capitol's cross complaint alleging indemnity by implied contract. We take up the latter of these claims first.

As discussed earlier, a directed verdict cannot be justified unless the jury could not "reasonably and legally" reach any other conclusion. *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984). This count of Capitol's cross complaint alleged that Wetherell had breached an implied indemnity agreement. Wetherell asserts that no evidence was introduced at trial regarding the existence of a written agreement between Capitol and Wetherell, or of any express indemnity agreement between them, or of conduct establishing an implied agreement. Wetherell does concede, however, that there was an oral agreement between itself and Capitol regarding the crane work to be done, and

---

[13] Wetherell has also assigned, as error, the court's denial of Wetherell's motion for a directed verdict on this point. Since these two claims of error present essentially the same issue, they shall be treated as one.

the price therefor. Further, there was testimony from Robert Vonderkall, president of Capitol Crane at the time of the accident, to the effect that Capitol refused on more than one occasion to do further work on the project until accurate weight measurements were provided by Wetherell regarding the ductwork to be removed. Capitol, in fact, refused to remove alone one of the pieces of ductwork which Alpha subsequently assisted in removing before the accident, because it was informed, apparently by chance, that two cranes had been required to install the piece. As a result of these adamant refusals to perform a dangerous task, Wetherell agreed to do what it could to obtain accurate estimates of the weight of each piece of ductwork, and authorized Capitol to get a second crane onto the job site.

A contract implied in fact may be inferred from words, action or conduct. *Therrien* v. *Safeguard Mfg. Co.,* 180 Conn. 91, 94–95, 429 A.2d 808 (1980). From the above testimony the jury could well have concluded that the oral agreement between Wetherell and Capitol placed the burden of verifying the weights of the ductwork, and of hiring another crane, upon Wetherell. The jury also could have reasonably inferred that Wetherell breached this agreement. Thus, a directed verdict would have been improper on this claim, and the trial court was correct in denying such a motion.

Having concluded that Capitol's second claim was properly submitted to the jury, we note that the jury returned a general verdict in this case. That verdict must now stand if any one of the claims submitted to the jury was properly submitted. *Farley* v. *T.R.W., Inc.,* 4 Conn. App. 191, 195A, 493 A.2d 268 (1985). Thus, we decline to review the issue of whether or not the court was correct in granting Capitol's motion for a directed verdict as to liability on the claim of indem-

nity from a party primarily negligent in its cross complaint.

Finally, we note that where a claim for indemnity is based on liability of a primarily negligent party, or upon an implied contract theory, the right to attorney's fees exists with regard to those fees incurred in defense of the claim to be indemnified, but not to fees incurred in establishing the right to indemnification. *Burr* v. *Lichtenheim*, 190 Conn. 351, 363, 460 A.2d 1290 (1983). Thus, since in the present case both claims for attorney's fees were sought, we must remand to the trial court for a determination of the amount of the fees which were attributable solely to the defense of the claims of liability made against Capitol, as opposed to those fees incurred in obtaining indemnity from Wetherell. As in UTC's claim, only the former may be awarded in this case.

There is no error on the appeal by the plaintiff Aparo; there is no error on the appeal by the defendant Wetherell as to the judgment in favor of the plaintiff William Palmeri; there is error on the appeals by the defendant Wetherell as to the judgments in favor of the plaintiff Aparo and in favor of the cross complainants in each case, United Technologies Corporation and Capitol Crane Company, which judgments are set aside and the cases are remanded to the trial court with direction to render judgment for the defendant Wetherell on the plaintiff Aparo's complaint, and for further proceedings in accordance with this opinion with respect to the cross complaints of United Technologies Corporation and Capitol Crane Company against Wetherell.

In this opinion the other judges concurred.