******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL J. DUNKLING *v.* LAWRENCE
BRUNOLI, INC., ET AL.
(AC 41634)

DiPentima, C. J., and Lavine and Beach, Js.

*Syllabus*

The defendants B Co. and its insurer appealed to this court from the decision
of the Compensation Review Board affirming the decision of the Work-
ers' Compensation Commissioner, which determined that B Co., a gen-
eral contractor, was the principal employer of the plaintiff D, when he
suffered a compensable injury while working for an uninsured subcon-
tractor, M Co. B Co. had contracted with the state on a construction
project, and B Co. then subcontracted work to M Co. and C Co. D was
an employee of C Co. and worked on the construction project installing
siding and gutters until he was laid off in November, 2014. B Co. war-
ranted all the work performed against failures of workmanship and
materials for one year after it left the worksite in September, 2014. In
November, 2014, the state contacted B Co. about repairing a leaking
gutter. Thereafter, B Co. contacted M Co. and indicated that it was
refusing final payment until the repairs were made. Subsequently, the
president of M Co., R, hired D directly to repair the leaking gutter. On
December 4, 2014, D and R traveled to the worksite to make the repairs,
during which D fell from a ladder and sustained injuries. After a formal
hearing, the commissioner found, inter alia, that D was an employee of
M Co. and sustained a compensable injury, and ordered M Co. to accept
compensability for D's injuries. Thereafter, the commissioner made a
subsequent finding that B Co. was a principal employer pursuant to
statute (§ 31-291) and, thus, also was liable for compensation benefits
due to D, on the basis that B Co. initially subcontracted with M. Co.
and that D's injuries were sustained as the result of B Co.'s direct
communication and directive to M Co. to repair the gutters. On appeal,
the board, inter alia, affirmed the commissioner's decision, finding that
more than one entity may be deemed a claimant's principal employer.
On the defendants' appeal to this court, *held*:

1. The defendants could not prevail on their claim that the board committed
   error in affirming the commissioner's finding that B Co. was a principal
   employer pursuant to § 31-291, because B Co. was not in control of the
   worksite when D was injured: although B Co. was not present to oversee
   the repair, B Co. was in control of the worksite, as the state directed
   B Co. to repair the gutter and, thereafter, B Co. directed M. Co. to send
   a representative to the worksite, B Co. was obligated, pursuant to the
   contract, to complete the worksite project to the state's satisfaction,
   and B Co. was aware of the risks and dangers worksites presented but
   did not elect to supervise the gutter repair and did not repair the gutters
   itself; furthermore, B Co. could not prevail on its claim that the board's
   decision was unreasonable because a general contractor has no legal
   right to require a subcontractor to maintain workers' compensation
   insurance indefinitely; workers' compensation law provides benefits
   for workers who sustain injuries arising out of and in the course of
   employment, and the facts of the present case did not concern a future
   claim, as D was injured while he made repairs pursuant to B Co.'s
   direction to M Co., B Co. was in control of who made the repairs, and
   B Co. had the ability to supervise the repair or make the repair itself,
   if M Co.'s workers' compensation coverage was in doubt.

2. The board did not err in affirming the commissioner's ruling denying the
   defendants' motion to correct regarding communication between B Co.
   and the state concerning a warranty, as this claim was not relevant to
   employees or workers' compensation benefits in the present case;
   instead, the issue of warranty was relevant to B Co.'s relationship with
   the state, and any error the commissioner made in finding that B Co.
   warranted the construction at the worksite was harmless, as B Co.
   controlled the worksite by directing M Co. to send a representative to
   the worksite to repair the leaking gutter.

Argued November 21, 2019—officially released February 4, 2020

Appeal from the decision of the Workers' Compensation Commissioner for the Fifth District determining, inter alia, that the named defendant was the principal employer of the plaintiff, brought to the Compensation Review Board, which affirmed the commissioner's decision and the named defendant et al. appealed to this court. *Affirmed.*

*Christopher J. Powderly*, for the appellants (named defendant et al.).

*Donna H. Summers*, assistant attorney general, for the appellee (defendant Second Injury Fund).

*Opinion*

LAVINE, J. The defendants Lawrence Brunoli, Inc. (Brunoli) and its insurer, Liberty Mutual Insurance Company, appeal from the decision of the Compensation Review Board (board) affirming in part the supplemental findings and award of the Workers' Compensation Commissioner for the Fifth District (commissioner).[1] The defendants' central claim on appeal is that the board erred as a matter of law when it affirmed the commissioner's determination that, on the date that the plaintiff, Michael J. Dunkling, sustained a compensable injury, Brunoli was a principal employer pursuant to General Statutes § 31-291.[2] We affirm the decision of the board.

The record reveals the following procedural history and relevant facts. On December 4, 2014, Dunkling was repairing gutters at Brunoli's request when he fell from a ladder and suffered injuries. On December 23, 2014, he filed a form 30C,[3] seeking compensation benefits against Brunoli, which in turn filed a form 43,[4] denying that Dunkling's injuries arose out of and in the course of employment. Brunoli's subcontractors, Connecticut Metal Structures, LLC (Connecticut Metal), and Mid-State Metal Building Company, LLC (Mid-State),[5] were made parties to the action as well as the Second Injury Fund (fund).[6] Following a number of informal and preformal hearings, the case was tried before the commissioner on September 10, 2015, October 28, 2015, and January 5, 2016. The parties jointly stipulated that Brunoli had workers' compensation insurance on December 4, 2014, but neither Mid-State nor Connecticut Metal had such insurance on that date. Following the formal hearing, the commissioner issued his finding and award on June 20, 2016. The commissioner framed the issue as whether Dunkling was employed by Brunoli, Connecticut Metal, or Mid-State at the time of his injury on December 4, 2014.

In his original finding and award, the commissioner found that on July 19, 2012, the Department of Transportation (state) entered into a contract with Brunoli to act as the general contractor for a construction project in Colchester (worksite). The contract permitted Brunoli to subcontract work with Mid-State and Connecticut Metal. Brunoli warranted all work performed under the contract for a period of one year from September 16, 2014, when it left the worksite, against failures of workmanship and materials.

Connecticut Metal employed Dunkling as an hourly employee in 2013. Dunkling began installing siding and gutters at the worksite in January, 2014, and was paid at or above the prevailing wage. He continued to perform services at the worksite until June, 2014, and was employed by Connecticut Metal until November, 2014, when he was laid off.

In November, 2014, the state contacted Brunoli about a leaking gutter. On December 3, 2014, Bertrand Rompre, president of Mid-State, contacted Dunkling and requested that he return to the worksite with him to repair a leaking gutter. Rompre indicated to Dunkling that Brunoli refused final payment to Mid-State until the leak was repaired. Rompre agreed to pay Dunkling at his usual wage for repairing the gutter on December 4, 2014.

On December 4, 2014, Dunkling met Rompre at Mid-State's offices, and Rompre took him to the worksite and directed him to the location of the leak. Rompre provided Dunkling with materials, including a ladder, to repair the leak. Dunkling had been working for approximately four hours[7] when the ladder Rompre provided retracted, causing him to fall and sustain multiple injuries. He has not worked since December 4, 2014. His medical bills totaled $16,675.26.

On the basis of the evidence, the commissioner found that Dunkling was a credible witness, who had sustained compensable injuries in the course and scope of his employment with Mid-State on December 4, 2014. The employer-employee relationship was the result of conduct between Dunkling and Rompre. The commissioner ordered Mid-State to accept compensability for Dunkling's reasonable and necessary treatment of the injuries he sustained, along with all related present and future medical treatment, including, but not limited to, permanent partial impairment to be determined at a future hearing.

On June 23, 2016, the fund filed a motion for articulation, stating that, at the September 10, 2015 hearing, the issue of principal employer under § 31-291 was identified. Brunoli and the fund had addressed the issue in their posttrial briefs, but the commissioner failed to address it in his finding and award. The fund asked the commissioner to reconsider his decision and to issue findings relevant to the issue of principal employer.

The commissioner held an additional formal hearing on July 22, 2016, and issued a supplemental finding and award on October 28, 2016, making the following additional findings. Brunoli had contracted with the state and subcontractors to build a structure at the worksite as part of its trade or business. Dunkling was injured within the specified area of the worksite. Although it is undisputed that Brunoli initially subcontracted with Mid-State, the injuries that Dunkling had sustained on December 4, 2014, came about in response to Brunoli's communication and directive to Mid-State that it summon a representative to the worksite for gutter repair, even though no Brunoli representative remained on the worksite.[8] The commissioner reached the additional conclusion that Brunoli was a principal employer pursuant to § 31-291 on December 4, 2014.

The defendants filed a petition for review of the commissioner's supplemental finding and award, stating that the commissioner erroneously found that Brunoli "satisfied the requirements necessary to be deemed a principal employer, contrary to the underlying facts and applicable law." On December 9, 2016, the fund filed a motion to correct that contained sixteen items.[9] On December 11, 2016, the defendants filed a motion to correct that contained nineteen items.[10] The commissioner denied each of the motions to correct in its entirety.

The defendants' petition for review was heard by the board on September 29, 2017. The board issued its opinion on April 25, 2018. The board noted that, on appeal, Brunoli took the position that the worksite where Dunkling was injured was substantially complete on December 4, 2014; see footnote 7 of this opinion; and that, because Brunoli did not exercise control over the worksite, § 31-291 does not apply to the facts of the case. The fund, however, contended that the facts before the commissioner supported his finding that Brunoli had sufficient control over the worksite to apply § 31-291. The board agreed with the fund and affirmed the commissioner's supplemental finding that Brunoli is liable to Dunkling as a principal employer.

The fund also argued to the board that the case should be remanded for resolution of various issues related to the relief to which Dunkling is entitled, but were not addressed in the commissioner's supplemental finding. The fund noted that more than one entity may be deemed a claimant's principal employer and that each entity in the chain between the general contractor and the claimant's immediate employer may be found liable for the claimant's injuries. See *Samaoya* v. *Gallagher*, 102 Conn. App. 670, 678, 926 A.2d 1052 (2007), citing to *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 365, 122 A. 63 (1923). The fund had raised the multiple employer issue in its motion to correct, which the commissioner denied. The board determined that it was error for the commissioner to have denied that portion of the fund's motion to correct. Moreover, the board stated that the commissioner's supplemental finding did not establish a wage rate for Dunkling or the duration of his disability so that the amount of his compensation could be calculated. The board, therefore, remanded the case to the commissioner for additional proceedings.

The defendants thereafter appealed to this court, essentially claiming that the board erred as a matter of law in affirming the commissioner's finding that Brunoli was a principal employer within the meaning of § 31-291 on December 4, 2014.[11]

The standard of review in workers' compensation matters is well established. The board's "hearing of an appeal from the commissioner is not a de novo hearing

of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts." (Internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 92 Conn. App. 650, 651, 887 A.2d 382 (2005). "[T]he power and duty of determining the facts [rest] on the commissioner, the trier of facts. . . . It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted. . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court.

"[The] scope of review of actions of the [board] is . . . limited. . . . The decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Citation omitted; internal quotation marks omitted.) *Hebert* v. *RWA, Inc.*, 48 Conn. App. 449, 452–53, 709 A.2d 1149, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998).

I

The defendants claim that the board erred by affirming the commissioner's finding that Brunoli was a principal employer under § 31-291, arguing that Brunoli was not in control of the premises when Dunkling was injured. The essence of Brunoli's claim is that because it substantially had completed construction at the worksite and had withdrawn in September, 2014, it was no longer in control of the worksite on December 4, 2014. We disagree.

Resolution of this claim is a matter of statutory construction. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny . . . or when its construction of a statute has not been time-tested." (Citation omitted; internal quotation marks omitted.) *Gill* v. *Brescome Barton, Inc.*, 317 Conn. 33, 42, 114 A.3d 1210 (2015).

"[I]t is well established that, in resolving issues of statutory construction under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] act . . . the act indisputably is a remedial statute that should

be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Internal quotation marks omitted.) *Wiblyi* v. *McDonald's Corp.*, 168 Conn. App. 77, 85, 144 A.3d 1075 (2016).

"The purpose of § 31-291 is to protect employees of minor contractors against the possible irresponsibility of their immediate employers, by making the principal employer who has general control of the business in hand liable as if he had directly employed all who work upon any part of the business which he has undertaken to carry on. . . . Any reasonable reading of § 31-291 makes it clear that the principal employer is ultimately liable for payment of a [workers'] compensation claim for an injury received while at work." (Citation omitted; internal quotation marks omitted.) *Hebert* v. *RWA, Inc.*, supra, 48 Conn. App. 455–56.

Our Supreme Court has stated that, "[i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citation omitted; internal quotation marks omitted.) *Hart* v. *Federal Express Corp.*, 321 Conn. 1, 19, 135 A.3d 38 (2016); see also Regs., Conn. State Agencies § 31-301-8.

General Statutes § 31-291 provides in relevant part: "When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done is part or process in the trade or business of such principal employer, and *is performed in, on or about premises under his control*, such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor. . . ." (Emphasis added.) Our appellate courts previously have construed § 31-291 and, in particular, the element of control of the premises.

There are three primary elements of § 31-291. See *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, 6 Conn. App. 60, 72, 504 A.2d 1376, cert. denied, 199 Conn. 808, 508 A.2d 769 (1986). "One, the relation of the principal employer and contractor must exist in work wholly or in part for the former. Two, the work must be in, on or about the premises controlled by the principal employer; and three, the work must be a part or process in the trade or business of the principal employer." (Internal quotation marks omitted.) *Mancini* v. *Bureau of Public Works*, 167 Conn. 189, 193, 355 A.2d 32 (1974). The parties agree that the first and third elements of the statute are met in the present case. They disagree as to whether Brunoli was in control of the worksite.

"The term control in [the context of § 31-291] has a specific meaning. It is merely descriptive of the work area and is used instead of such words as owned by him or in his possession in order to describe the area in a more inclusive fashion. The emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident." (Internal quotation marks omitted.) *Alpha Crane Service, Inc.* v. *Capitol Crane Co.*, supra, 6 Conn. App. 72–73.

The board affirmed the commissioner's finding that Brunoli had a contract with the state to construct a building at the worksite. It also found that Brunoli initially subcontracted with Mid-State to perform siding and gutter work at the worksite. After the state informed Brunoli that there was a problem due to a leaky gutter over a pass door, Brunoli contacted Rompre at Mid-State, one of its original subcontractors, and informed him that it was withholding payment due to the leak. Brunoli directed Mid-State to summon a representative to the worksite to repair the leak.[12] Rompre contacted Dunkling and asked him to fix the leaking gutter. Dunkling met Rompre at Mid-State and went to the worksite with him to repair the gutter. A state employee at the worksite pointed out additional leaks to Rompre. It was while Dunkling was repairing one of the other leaks; see footnote 6 of this opinion; that he fell from the ladder. The commissioner concluded that Brunoli was a principal employer. Brunoli took an appeal to the board claiming that it was not a principal employer because it was not in control of the worksite. The board affirmed the commissioner's finding that Brunoli was a principal employer on the basis of this court's decision in *Hebert* v. *RWA, Inc.*, supra, 48 Conn. App. 449.

In *Hebert*, the claimant was injured while he was employed by a subcontractor to install a rubber roof on a restaurant on behalf of the general contractor. Id., 451. The claimant filed a workers' compensation claim against both the subcontractor and the general contractor, who both failed to carry workers' compensation insurance. Id. The commissioner found that the claimant sustained a compensable injury and that the general contractor was a principal employer. Id., 452. The general contractor appealed to the board, claiming that the commissioner improperly had found that he was in control of the premises where the claimant was injured. Id., 454. He alleged that "he did not control the premises because he did not own them, have a trailer or office on them or have the ability to control the [claimant's] activities. The evidence shows, however, that [the general contractor] visited the job site daily, inspected the ongoing work and asked the [claimant] to address certain problem areas on the roof before proceeding. [The general contractor] alone dealt with the owners of the

premises and he was ultimately responsible to them for the satisfactory completion of the work." Id. He also claimed that the nature of his business was residential remodeling, not roof installation. Id.

This court affirmed the board's decision and adopted its reasoning that the general contractor "obtained the contract for installation of the roof by dealing directly with the restaurant and that he then hired [the subcontractor] to install the roof. [The general contractor] negotiated the contract price with the restaurant and with [the subcontractor], reserving a fee for himself. The case law is settled that as long as the subcontractor's operations entered directly into the successful performance of the commercial function of the principal employer . . . those operations are a part of the process of the trade or business of the principal employer." (Citation omitted; internal quotation marks omitted.) Id., 454–55. *Hebert* is on point with the facts before us.

In the present case, Brunoli negotiated a contract with the state to construct a building at the worksite. It also subcontracted with Mid-State and Connecticut Metal to perform services at the worksite. Brunoli was obligated to complete the worksite project to the satisfaction of the state. Brunoli informed Rompre that it was withholding payment because of a leak and directed Rompre to send a representative to the worksite to fix it. The fact that the state not only permitted, but also directed Brunoli to go to the state owned worksite to repair the leak is evidence that Brunoli was in control of the worksite where the leak occurred. Brunoli argues that, unlike the general contractor in *Hebert*, it did not go to the worksite to oversee the gutter repair. That is a distinction without a difference in the present case. Brunoli was required to fix the leak and had control over who repaired the gutter. It directed Mid-State to send a representative to the worksite to fix the gutter. Brunoli, as a general contractor, surely is aware of the risks and the dangers present at a worksite and it could have gone to supervise the gutter repair if it had concerns and had elected to do so. Instead, it delegated the responsibility to its subcontractor, Mid-State.

Brunoli claims that the board's decision is unreasonable and bad policy for several reasons because a general contractor has no legal right to require a subcontractor to maintain workers' compensation insurance indefinitely. Our decision, however, does not stand for the proposition that a general contractor must require a subcontractor to maintain workers' compensation insurance indefinitely. Our workers' compensation law provides benefits for workers who sustain injuries arising out of and in the course of employment. See, e.g., *Spatafore* v. *Yale University*, 239 Conn. 408, 417–18, 684 A.2d 1155 (1996). The issue in the present appeal is limited to its facts. After Brunoli and its subcontractors substantially had completed construction at the work-

site, Brunoli directed one of its subcontractors to return to the worksite to repair a leaking gutter. Brunoli controlled whom it directed to repair the leak. Brunoli asked Mid-State to repair the gutters. Unfortunately, Dunkling was injured while he was repairing the gutter at Brunoli's direction. This case is about what happened on December 4, 2014, not in the future. If Brunoli had questions about Mid-State's workers' compensation coverage, it could have inquired. It also could have gone to the worksite to supervise the repair or it could have repaired the gutters itself if Mid-State's compensation coverage was in doubt.

For the foregoing reasons, we conclude that the board properly affirmed the commissioner's finding that Brunoli is a principal employer.

## II

The defendants also claim that the board improperly affirmed the commissioner's ruling denying their motion to correct with respect to communication between Brunoli and the state concerning a warranty. The issue of a warranty in the present case is a red herring, as it is relevant to Brunoli's relationship with the state, and is not relevant to its employees and workers' compensation benefits. To the extent that the commissioner erred in finding that Brunoli warranted the construction at the worksite, it is harmless error, if any. As we stated in part I of this opinion, Brunoli controlled the worksite by directing Mid-State to send a representative to the worksite to repair the leaking gutter. Brunoli may have been obligated to the state to fix the leak, but workers' compensation coverage in the present case is a separate issue.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] All references to the defendants are to Brunoli and its insurer. Other parties named as defendants in the action are addressed by name subsequently in this opinion.

[2] The defendants claim that (1) the board's decision that Brunoli is a principal employer violates the rules of statutory construction, (2) the board committed legal error by affirming the commissioner's finding that Brunoli was a principal employer, (3) the board's reliance on *Hebert* v. *RWA, Inc.*, 48 Conn. App. 449, 709 A.2d 1149, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998), was misplaced, (4) the board and the trial commissioner erred as a matter of law by incorporating warranty considerations in reaching their conclusions as to the applicability of § 31-291, (5) alternatively, if warranty considerations are relevant to the § 31-291 issues, the board erred as a matter of law by affirming the commissioner's denial of the defendants' motion to correct, which itself was legal error, (6) the board and the commissioner erred as a matter of law by including communications between Brunoli and the Department of Transportation as to leaking gutters in reaching their conclusions with respect to § 31-291, (7) alternatively, if communications among Brunoli, the state, and Mid-State Metal Buildings Company, LLC are relevant to the § 31-291 issues, the board erred as a matter of law by affirming the commissioner's denial of the motion to correct filed by Brunoli and its insurer, which itself was legal error.

[3] "A form 30C is the document prescribed by the . . . commission to be used when filing a notice of claim pursuant to the [Workers' Compensation Act]." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim*

*Corp.*, 138 Conn. App. 826, 828 n.3, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[4] "A form 43 is a disclaimer that notifies a claimant who seeks workers' compensation benefits that the employer intends to contest liability to pay compensation." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 828 n.2, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[5] Connecticut Metal and Mid-State are not parties to the present appeal.

[6] The fund assumed responsibility for Dunkling's injuries pursuant to General Statutes § 31-355 (b), which provides in relevant part that "[w]hen an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. . . ."

[7] The record discloses that while Rompre and Dunkling were present at the worksite, a state employee pointed out six or seven additional leaks, which Rompre directed Dunkling to repair so they would not have to return. On appeal, Brunoli argues that it asked Mid-State to repair just one leak and, therefore, it should not be responsible for the injuries Dunkling sustained when he was fixing the other leaks, if at all. The defendants' argument regarding the number of leaks Dunkling repaired is meritless. Brunoli was withholding payment from Mid-State due to gutter leaks, and Mid-State wanted to be paid. Rompre decided to have Dunkling fix all of the leaks while they were present.

[8] The record demonstrates that construction at the worksite was substantially complete on September 16, 2014, and that Brunoli withdrew from the worksite on September 24, 2014. The state took occupancy of the building beginning on September 29, 2014.

[9] The board summarized the corrections sought by the fund, to wit: "corrections clarifying the nature of the business relationship between Brunoli and its subcontractors, as well as corrections to the 'Order' language in the Supplemental Finding regarding the obligations owed to [Dunkling] by both Mid-State and Brunoli."

[10] The board summarized the corrections sought by the defendants, to wit: Brunoli "sought to substitute findings that [it] was no longer in control of the premises on the date of [Dunkling's] injury and the party controlling the premises was the [state]."

[11] Although the board remanded the case to the commissioner for additional findings, this court has jurisdiction to hear the appeal pursuant to General Statutes § 31-301b, which provides: "[A]ny party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court, whether or not the decision is a final decision within the meaning of section 4-183 or a final judgment within the meaning of section 52-263."

[12] Dunkling initially was employed by Connecticut Metal to perform siding and gutter work at the worksite. The record discloses that on November 14, 2014, Andrew Milovitsch, a state employee, contacted Peter Gavin, Brunoli's vice president, to inform him of a gutter leak over a pass door. Gavin communicated with Rompre and asked him to have the leak fixed. Rompre was unable to reach Robert Pelletier, a principal of Connecticut Metal, and therefore, contacted Dunkling directly.